UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DESMOND CAMBELL,

Petitioner,

— against —

UNITED STATES OF AMERICA,

Respondent.

09-cr-119 (ARR)
18-cv-05824 (ARR)

**Opinion & Order**

ROSS, United States District Judge:

In September 2010, Desmond Campbell pleaded guilty to conspiring to import more than 1,000 kilograms of marijuana. He subsequently fled to Jamaica just days before his sentencing was scheduled to take place. Over six years later, he was arrested and transported back to the United States. On July 27, 2017, after I denied Campbell's motion to withdraw his plea upon his return to the country, I sentenced him to 128 months in prison to be followed by a five-year period of supervised release. Campbell now moves *pro se* to vacate his conviction pursuant to 28 U.S.C. § 2255. For the following reasons, his petition is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

Desmond Campbell ("petitioner" or "Campbell") is a citizen of Jamaica who moved to the United States in 1980. *See* Campbell Affirm. ¶¶ 2–4, ECF No. 615-1. On February 17, 2010, he was charged by superseding indictment with international conspiracy to distribute marijuana and conspiracy to import marijuana in violation of 21 U.S.C. § 959(a) and 21 U.S.C. § 963. *See* Superseding Indictment 8–10, ECF No. 137. He was later arrested and arraigned on the same charges, *see* Feb. 17, 2010 Minute Entry, ECF No. 143, and retained a private attorney, Michael

1

Warren, to represent him, *id.*; *see also* Warren Decl. (Jan. 8, 2018) ¶¶ 3–4, ECF No. 611-1. The indictment charged Campbell with conspiring with several other individuals between 2004 and 2009 to import and distribute more than 1,000 kilograms of marijuana to the United States. Superseding Indictment 8–10.

**I.     Guilty Plea**

On September 10, 2010, Campbell pleaded guilty to the third count of the superseding indictment—conspiring to import marijuana.[1] *See* Plea Agreement 9, ECF No. 595-4; Sept. 10, 2010 Minute Entry, ECF No. 329. The agreement informed him that, under the statute, this count carried a maximum sentence of life in prison and a minimum sentence of ten years in prison. Plea Agreement ¶ 1. It estimated Campbell's adjusted offense level under the Sentencing Guidelines to be level 32. *Id.* ¶ 2. Under the agreement, petitioner agreed to waive his right to bring appeals and other challenges as long as he was sentenced to no more than 151 months in prison. *Id.* ¶ 4. Finally, the plea agreement acknowledged that "pleading guilty may have consequences with respect to the defendant's immigration status" and further informed him that, in his case, "removal is presumptively mandatory" because Campbell was pleading guilty to conspiring to import marijuana. *Id.* ¶ 10.

At petitioner's plea hearing, I ensured that his plea was knowing and voluntary and that he understood the contents and substance of the plea agreement. I began by explaining to Campbell

---

[1] Three of petitioner's co-defendants, including his brother, proceeded to trial. *See, e.g.*, Gov't Letter 9, ECF No. 617; Pet'r's Resp. 1, ECF No. 619 (acknowledging that the government's recitation of the procedural history in this case was accurate). On the third day of trial, September 15, 2010, petitioner's brother, Tyrone Campbell, pleaded guilty to a money laundering conspiracy. *See* Gov't Letter 9; Superseding Information, ECF No. 336; Sept. 15, 2010 Minute Entry, ECF No. 338. Throughout these proceedings, Tyrone Campbell was represented by a court-appointed lawyer. *See* June 16, 2017 Op. & Order 5 n.1, ECF No. 596. At the end of trial, one of petitioner's co-defendants was acquitted and one was convicted. *See* Jury Verdict, ECF No. 354.

that he could stop me at any time to seek clarification of my questions. Plea Tr. 3, ECF No. 608. After he was sworn, he affirmed that he understood the criminal consequences of answering my questions untruthfully. *Id.* at 3. I confirmed with Mr. Warren that he believed Campbell to be competent to plead and capable of understanding the nature of the proceedings, *id.* at 5, and Campbell told me that he was satisfied with his lawyer's representation, *id.* at 5–6. After I became aware that Campbell struggles with reading, I reiterated that he should ask me or his lawyer if he did not understand any part of the plea hearing. *Id.* at 6–7. I proceeded to satisfy myself that petitioner understood the relevant elements of his plea agreement—even after he affirmed that Mr. Warren had read the agreement to him, that they had discussed it together, that he understood the agreement and the charge, and that there was no part of the agreement that he did not comprehend. *Id.* at 6, 10.

I explained to Campbell that, by pleading guilty, he would be giving up several of his rights, including the right to a jury trial. *Id.* at 7–8. He affirmed that he understood, and that he was willing to give up these rights in order to plead guilty. *Id.* at 9. I informed petitioner of the mandatory and minimum penalties under the statute, *id.* at 11–12, and that his estimated range under the Sentencing Guidelines was 121 to 151 months—though I explained that this was only an estimate and that his actual range could end up being higher than the range that the lawyers were now estimating, *id.* at 14–15. I also informed him that, as a result of his plea, he "will be removed from the United States." *Id.* at 13. I ensured that he understood that, "no matter what anyone said to [him] about whether or not [he] would be removed or deported, no one could tell [him] that [he] wouldn't or [he] might not [be deported,] because [he] will be removed or deported." *Id.* at 13. He confirmed that he understood that removal from the United States was a consequence of his plea. *Id.* at 14. Petitioner also affirmed that he understood that he would be waiving his right to appeal

"or otherwise challenge [his] conviction or sentence by habeas corpus petition" as long as I imposed a prison term of 151 months or less. *Id.* at 15–16. Before he entered his plea, I asked him three more times to confirm that he understood the agreement and that he had no additional questions for me or his lawyer. *Id.* at 16.

Campbell then entered his guilty plea. He began by affirming that he was pleading guilty, that he did so voluntarily and of his own free will, and that he was not threatened, coerced or given any promises in exchange for his plea. *Id.* at 17. After I asked Campbell to tell me in his own words what he did that makes him guilty, *id.* at 18, he told me that he "associated with other people . . . [t]o bring drugs in" to the United States from outside of the country, *id.* at 18–19. I then asked him if he—along with others "foreseeably within the scope of [his] understanding, [his] agreement"— planned to import at least 1,000 kilograms of marijuana into the United States. *Id.* at 19. He said yes, and further affirmed that the agreement took place between 2004 and 2009 and that, as part of the agreement, he delivered marijuana within Brooklyn. *Id.* Based on the information he provided, I concluded that his plea was voluntary and knowing, and I accepted his plea. *Id.* at 20. Sentencing was set for January 11, 2011, just over four months after the plea hearing. *Id.*

## II.     Motion to Withdraw Guilty Plea

When petitioner failed to appear for his sentencing, pretrial services initiated an investigation that revealed that he had fled to Jamaica. *See* Jan. 11, 2011 Mem., ECF No. 385 2–3. Magistrate Judge Marilyn D. Go issued a warrant for his arrest, *see* Order for Issuance of Arrest Warrant, ECF No. 385, and the government submitted an extradition request to the Jamaican government, Gov't Letter 9, ECF No. 617. Campbell was eventually found and arrested in Jamaica in April 2017, transported back to the United States, and assigned new counsel for sentencing. *Id.*

On May 23, 2017, petitioner filed a motion to withdraw his guilty plea. *Id.*; *see also* June

4

16, 2017 Op. & Order, ECF No. 596. His motion argued, among other things, that his plea was neither knowing nor voluntary because he misunderstood the minimum sentence and the sentencing guidelines, he received ineffective assistance of counsel due to a fee dispute with his lawyer, and he did not comprehend the questions he was asked at his plea allocation. June 16, 2017 Op. & Order 7.

I denied his request to withdraw his plea, concluding that his allegations directly contradicted the sworn statements he made during the plea allocation and that the fugitive disentitlement doctrine independently warranted denial of his motion. *Id.* at 10–15. On July 27, 2017, I sentenced him to 128 months in prison and five years of supervised release. *See* J. in a Criminal Case, ECF No. 602. My judgment denying his motion to withdraw his guilty plea was affirmed on direct appeal to the Second Circuit in September 2018. *See* Mandate, ECF No. 614.

## DISCUSSION

Campbell now moves to vacate his sentence pursuant to 28 U.S.C. § 2255.[2] As I explain below, his claims all fail: many are completely belied by the record of the plea allocution, some

---

[2] Though petitioner's waiver of his right to challenge his conviction or sentence (Plea Agreement ¶ 4) is presumptively enforceable, it does not automatically bar the instant petition. A habeas and appellate waiver "does not foreclose an attack on the validity of the process by which the waiver has been procured." *Frederick v. Warden, Lewisburg Correctional Facility*, 308 F.3d 192, 195 (2d Cir. 2002). In other words, a petitioner who argues that his plea was the *result* of ineffective assistance of counsel cannot be forbidden from challenging his plea under 28 U.S.C. § 2255; to hold otherwise would be to use "the very product of the alleged ineffectiveness" as a bar to relief. *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). Because petitioner argues that his plea was neither knowing nor voluntary and was instead the result of ineffective assistance of counsel, he is challenging the "process by which the plea agreement was consummated," and, thus, his waiver does not bar a consideration of those arguments by the court. *United States v. Hernandez*, 242 F.3d 110, 114 (2d Cir. 2001). I note, as well, that while both parties cite to the Supreme Court's recent decision in *Class v. United States*, 138 S. Ct. 798 (2018), that case is inapposite, as it involved a petitioner's challenge to the statute under which he was convicted, rather than the process that led to his conviction. *Id.* at 803.

are procedurally barred by the mandate rule, and petitioner has failed to demonstrate that he was prejudiced by any possible deficiencies in his counsel's conduct. Because I find that the record of the case "conclusively show[s] that [petitioner] is entitled to no relief," I deny his petition without holding a hearing.[3] 28 U.S.C. § 2255(b).

I. **To the extent that they were considered and rejected by the Second Circuit on direct appeal, petitioner's habeas claims are barred.**

"It is well settled that 'section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal.'" *Barnett v. United States*, 870 F. Supp. 1197, 1201 (S.D.N.Y. 1994) (quoting *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992)). This rule, also known as the mandate rule, is intended to impose constraints on collateral attacks, with the general understanding that collateral challenges are "in 'tension with society's strong interest in the finality of criminal convictions.'" *Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quoting *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir. 1995)). Courts have applied the mandate rule to bar claims that were explicitly raised and considered on direct appeal as well as those that were "impliedly rejected by the appellate court mandate." *Id.*

On direct appeal, the Second Circuit affirmed my order denying petitioner's motion to

---

[3] Because petitioner is *pro se*, I "construe [his] submissions 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Marte v. United States*, 952 F. Supp. 2d 537, 540 (S.D.N.Y. 2013) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). Even when viewed in the light most favorable to petitioner, however, Campbell's petition fails to establish that he is entitled to an evidentiary hearing. *See, e.g.*, *Puglisi v. United States*, 586 F.3d 209, 213–14 (2d Cir. 2009). A hearing must be held on a § 2255 petition "[i]f material facts are in dispute," *id.* at 213, but "a district court need not assume the credibility of factual assertions . . . where [they] are contradicted by the record in the underlying proceeding," *id.* at 214; *see also United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987) ("Airy generalities, conclusory assertions and hearsay statements will not suffice [to establish a petitioner's entitlement to a hearing] because none of these would be admissible evidence at a hearing."). Here, as discussed more fully below, *infra*, pt. II.B, petitioner alleges one fact that is not clearly disputed by the record, but he fails to demonstrate that it is either material or relevant; all other allegations are clearly contradicted by the record.

withdraw his guilty plea. *United States v. Campbell*, 729 F. App'x 108 (2d Cir. 2018) (summary order); *see also United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997) (applying the mandate rule to a collateral challenge after a petitioner directly appealed the district court's denial of petitioner's motion to withdraw his guilty plea). Because the court found that I did not abuse my discretion when I found that Campbell's motion was barred by the fugitive disentitlement doctrine,[4] it determined that it "need not address [his] additional argument, that the District Court erred when, in reaching the merits of [his] claim, it found that [his] 2010 plea was knowing and voluntary." *Campbell*, 729 F. App'x at 110. The court concluded by noting that it had "reviewed [Campbell's] remaining arguments and f[ou]nd them to be without merit." *Id.* Though the court clearly ruled that the fugitive disentitlement doctrine was an appropriate basis for dismissing petitioner's motion to withdraw his plea, it is not apparent from the summary order the extent to which the court actually considered and rejected petitioner's other claims. Therefore, "insofar as the Second Circuit considered [petitioner's] claims on direct appeal, petitioner may not relitigate them on this motion." *Barnett*, 870 F. Supp. at 1201. To the extent that some claims were raised but not considered on appeal, however, I review them independently before rejecting them on the merits.[5]

---

[4] As both parties acknowledge, the Second Circuit has not yet determined whether the fugitive disentitlement doctrine can be used to bar consideration of a petitioner's section 2255 petition. *See Hanson v. Phillips*, 442 F.3d 789, 795 (2d Cir. 2006) (noting that the Second Circuit has "never dismissed an appeal of a habeas proceeding on fugitive disentitlement grounds" before finding that, in the circumstances presented in that case, the justifications of the disentitlement doctrine were not served by a dismissal). Because this is an open question in the circuit, and because petitioner's claims fail on their merits, I decline to unilaterally find that the doctrine provides a basis for dismissal by following the lead of other circuits, *see* Gov't Letter 16.

[5] Though some of petitioner's claims were raised for the first time in this motion, petitioner's claims are not procedurally barred to the extent that they raise claims of ineffective assistance of counsel, which may be raised for the first time in the § 2255 context even without a specific showing of cause and prejudice. *See Mui*, 614 F.3d at 54 (citing *Massaro v. United States*, 538

## II. Petitioner was not deprived of constitutionally effective assistance of counsel.

Most of Campbell's claims are based on his assertion that he was deprived of his Sixth Amendment right to effective assistance of counsel during the plea negotiation process and upon his return to the United States. He claims that Mr. Warren (1) failed to inform him that he would be subjected to mandatory deportation as a result of his plea, (2) pressured him into pleading guilty by demanding more money to go to trial, and (3) failed to negotiate a plea that would not result in mandatory deportation. *See* Pet. 5–7, 9–10, ECF No. 615. He also argues that the lawyer who represented him during his sentencing was ineffective because he failed to argue that his ignorance regarding the deportation consequences of his plea rendered his plea involuntary. *Id.* at 10. The Second Circuit has acknowledged that ineffective assistance of counsel during a defendant's plea negotiation process "can invalidate a guilty plea . . . to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005).

Petitioner must establish two things in order to demonstrate that his counsel's assistance was constitutionally ineffective: (1) counsel's performance was deficient, in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's performance "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Here, because Campbell argues that he entered a plea as the result of counsel's deficient performance, he can prove prejudice only by demonstrating that he "would have gone to trial but for counsel's error." *Arteca*, 411 F.3d at 322. A "belated and conclusory statement" that petitioner would have gone to trial had he known of the consequences of his plea is insufficient to show prejudice, even if a petitioner succeeds in demonstrating that his

---

U.S. 500, 509 (2003)).

attorney provided inadequate counsel. *Id.* Petitioner must cite to some "objective evidence," aside from his conclusory assertions, to establish prejudice. *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003). Where the record reveals that the petitioner has not suffered prejudice, many courts address that prong of the *Strickland* inquiry first, dismissing an ineffective-assistance-of-counsel claim on that basis without considering whether counsel's performance was deficient. *See, e.g.*, *Francis v. United States*, No. 12 Civ. 01362(AJN), 2013 WL 673868, at *2 (S.D.N.Y. Feb. 25, 2013); *see also Strickland*, 466 U.S. at 697 (noting that a court need not address both prongs nor address them in a particular order).

In this case, because the record of the plea allocution demonstrates that petitioner was adequately informed of the immigration consequences of his plea, he has failed to demonstrate prejudice, and therefore his claims based on ineffective assistance of counsel must fail.

### A. Immigration Consequences of Plea

Petitioner claims that his lawyer failed to comply with the requirements of *Padilla v. Kentucky*, which held that a lawyer provides ineffective assistance of counsel when he fails to notify a noncitizen client that deportation is a clear and certain consequence of a guilty plea, 559 U.S. 356, 369 (2010). Yet even if petitioner's lawyer failed to inform him that he would be deported—a point which is contested by Mr. Warren, who affirmed that he discussed all parts of the plea agreement with Campbell before the plea hearing, *see* Warren Decl. ¶ 13 (Jan. 8, 2018)—petitioner has failed to demonstrate that he was prejudiced by any deficiencies he alleges in his counsel's performance.

To the contrary, Campbell's claim that he was unaware of the immigration consequences of his plea is directly contradicted by the record of the allocution. During the plea hearing, Campbell affirmed that he understood that his plea would cause him to be removed from the United

States. Plea Tr. 13. He later reiterated this understanding, testifying that he was aware that he "will be removed or deported"—regardless of any contrary information he may have received from his lawyer. *Id.* at 13–14. Campbell told me that his attorney read him the plea agreement and discussed its provisions with him, and he attested that he understood everything in the agreement. Plea Tr. 10; *see also* Warren Decl. ¶ 13 (Jan. 8, 2018) (affirming that he "reviewed the [plea] agreement with Campbell and explained each provision in the document"); Warren Decl. ¶ 3 (Oct. 26, 2018), ECF No. 617-1 (acknowledging that the plea agreement contained a clear description of the immigration consequences of Campbell's plea and that Campbell admitted under oath that he reviewed the agreement with his lawyer). He also affirmed that he was satisfied with his counsel's performance. Plea Tr. 5–6; *see also Abbey v. United States*, No. 09-CR-203S, 2013 WL 3897479, at *3 (W.D.N.Y. July 29, 2013) ("Petitioner's admissions during the plea hearings refute the notion that he was dissatisfied with his lawyer."). Finally, the agreement itself clearly described the removal consequences of petitioner's plea, specifically warning that the count to which petitioner was pleading guilty made removal "presumptively mandatory."[6] Plea Agreement ¶ 10.

The abundant evidence demonstrating that petitioner was aware of the immigration consequences of his plea directly refutes his claim of prejudice under the *Strickland* standard. It is well-established that, "when a defendant learns of the deportation consequences of his plea from a source other than his attorney, he is unable to satisfy *Strickland*'s second prong because he has not suffered prejudice." *Brown v. United States*, No. 10 Civ. 3012(BMC), 2010 WL 5313546, at *6 (E.D.N.Y. Dec. 17, 2010); *see also Ventura v. Meacham*, 957 F.2d 1048, 1058 (2d Cir. 1992)

---

[6] To the extent that petitioner may have been confused by the "presumptively mandatory" language contained in the plea agreement, *see* Pet'r's Resp. 3 (erroneously attesting that the plea agreement "stated that deportation was 'presumptive' not 'mandatory'"), my warning during the plea allocution clarified the meaning of the agreement, as I told petitioner that his plea meant that he "will be removed from the United States," Plea Tr. 13.

(holding that a "clear and thorough plea allocution" that sufficiently informs a defendant of the consequences of a plea agreement can serve to correct or resolve errors that may have otherwise been caused by counsel's performance); *Ellington v. United States*, No. 09 CIV 4539(HB), 2010 WL 1631497, at *3 (S.D.N.Y. Apr. 20, 2010) ("[W]hether counsel failed to inform [petitioner] of the potential immigration consequences of the guilty plea . . . is of no consequence since [the judge] explained the issue in open court."). Thus, the record of petitioner's plea allocution disproves his belated and conclusory assertion that he "would have insisted on going to trial" if he had known of the immigration consequences of his plea, Campbell Affirm. ¶ 30. In fact, petitioner's sworn statements demonstrate that he was aware of these consequences, and that he chose to plead guilty nonetheless. *See also United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) ("[A] district court [is] entitled to rely upon the defendant's sworn statements, made in open court . . . that he understood the consequences of his plea . . . .").

Moreover, though courts have acknowledged that a defendant's "close family ties and long-term residency in the United States" may bolster his claim that he would have proceeded to trial if he had been aware that his plea would make him deportable, *Francis*, 2013 WL 673868, at *5, petitioner does not point to any other factors that indicate that "deportation was the determinative issue" in his decision-making process, *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). Unlike the defendant in *Lee*, Campbell did not demonstrate during the plea hearing that he was motivated primarily by a desire to avoid deportation. *Id.* To the contrary, as the government persuasively argues, Campbell's belated claim that he "would have rather 'risked trial' than be deported" to Jamaica is undermined by the fact that he in fact fled to Jamaica after his guilty plea. Gov't Letter 24. Petitioner's affidavit fails to put forth "credible evidence that he 'would actually have insisted on going to trial had he known of the precise immigration consequences of his conviction.'"

11

*Francis*, 2013 WL 673868, at *4 (quoting *Boakye v. United States*, No. 09 Civ. 8217, 2010 WL 1645055, at *5 (S.D.N.Y. Apr. 22, 2010)); *see also Lee*, 137 S. Ct. at 1967 ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.").

Petitioner also argues that the lawyer who represented him at sentencing and in his motion to withdraw his guilty plea provided ineffective assistance of counsel by failing to argue that the deportation consequences of Campbell's plea should be a basis for withdrawal. For largely the same reasons, this claim fails. Because petitioner was not prejudiced by any alleged failure of his counsel to notify him before his plea that he would be deported, it was not error for his second lawyer to fail to raise this argument in his subsequent motion. *See, e.g.*, *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that counsel's "failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which Petitioner was entitled" (quoting *Jameson v. Coughlin*, 22 F.3d 427, 429 (2d Cir. 1994))); *cf. Strickland*, 466 U.S. at 695 (noting that a defendant cannot be prejudiced unless there was a real possibility of a result more favorable to the defendant, because the defendant "has no entitlement to the luck of a lawless decisionmaker").

Finally, Campbell has not demonstrated that he was prejudiced by his counsel's "alleged failure to negotiate a hypothetical plea bargain that would have spared [him] from deportation." *Ottenwarde v. United States*, No. 12 Civ. 6537(JGK), 2013 WL 1242632, at *7 (S.D.N.Y. Mar. 28, 2013). Campbell's argument that such a deal could have been made available to him with the appropriate guidance and negotiation of counsel is merely speculative. *Santana v. United States*, No. 12 Civ. 2150(JSR)(GWG), 2013 WL 717284, at *4 (S.D.N.Y. Feb. 28, 2013), *adopted by* 2013 WL 1499406 (S.D.N.Y. Apr. 11, 2013). He fails to demonstrate that "there was a reasonable

probability that [he] could have negotiated a plea that did not impact [his] immigration status." *Kovacs v. United States*, 744 F.3d 44, 52 (2d Cir. 2014). Nor, it seems, would he be able to meet this burden; the Assistant United States Attorney who "personally handled matters relating to Desmond Campbell" affirmed in her affidavit that she never offered petitioner a plea deal that did not include the possibility of deportation, and that the government would not have done so. Shweder Aff. ¶ 4, ECF No. 617-2. A conviction for conspiring to import marijuana makes removal from the United States presumptively mandatory, and petitioner has provided no reason for the court to believe that the government would have allowed him to plead to an offense that would have avoided these immigration consequences. *Ottenwarde*, 2013 WL 1242632, at *7.

### B. Fee Dispute

Campbell also fails to demonstrate that he received ineffective assistance of counsel as the result of a fee dispute with his lawyer. Specifically, Campbell alleges that his lawyer told him that he would have to pay an additional $25,000 if he wanted to go to trial, and "did not explain to [him] that [he] could be assigned a free attorney if [he] could not afford to pay for the trial." Campbell Affirm. ¶ 16. He argues that this fee dispute unduly pressured him to accept the plea deal, rendering his plea involuntary. Mr. Warren adamantly refutes this contention, declaring that petitioner's assertion is "patently false," and that he never "attempted to force [Campbell] to do anything, including pleading guilty." Warren Decl. ¶ 19 (Jan. 8, 2018). Campbell previously raised this claim before me in his motion to withdraw his guilty plea, and I now dismiss the claim for the same reasons as I expressed in my earlier opinion.[7]

---

[7] Though I explained earlier in this opinion that the Second Circuit's summary order does not provide a clear basis from which to conclude that the Second Circuit considered and rejected this argument on direct appeal, I am also mindful of the general principle that a court should avoid reconsidering a prior ruling "in the absence of an intervening ruling on the issue by a higher court" or "'cogent' and 'compelling' reasons" warranting reversal. *United States v. Quintieri*, 306 F.3d

13

The combination of Mr. Warren's declaration and petitioner's own sworn statements during his plea allocution render petitioner's claim of coercion meritless. *Cf. Berrios v. United States*, No. 07-CV-4441 (JS), 2009 WL 2226757, at *3 (E.D.N.Y. July 23, 2009) ("When an attorney's affidavit credibly contradicts a habeas petitioner's ineffective assistance of counsel claim, the Court is entitled to deny the petition without holding an evidentiary hearing."). During his plea hearing, petitioner testified that he was satisfied with his lawyer's representation and services, *see* Plea Tr. 5–6, and he affirmed that no one had "threatened, forced, [or] coerced" him to plead guilty or offered him any promises in exchange for doing so, *id.* at 17. Campbell takes issue with one part of his lawyer's declaration in particular, arguing that, contrary to Mr. Warren's assertions, Campbell's daughters—and not Campbell himself—were the ones who visited Mr. Warren in his office and retained his services. Pet'r's Resp. 2–3. Yet petitioner fails to demonstrate that his version of the events, even if true, has any bearing on his underlying claims, as it is not material to his assertions regarding his attorney's deficiencies. Moreover, even if this dispute did render Mr. Warren's declaration less credible, petitioner spoke on the record to affirm his satisfaction with his lawyer's performance and he clearly told me that his plea was voluntary and freely given, Plea Tr. 17; *see also Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009) ("[A] district court need not assume the credibility of factual assertions [in a § 2255 petition] where the assertions are contradicted by the record in the underlying proceeding."). Finally, as I explained in my opinion denying his motion to withdraw his guilty plea, his assertion that he was unaware that he could obtain a court-appointed lawyer is inconsistent with the government's proof that he had been advised of his rights and is also belied by his awareness that his co-defendant brother was being represented in the same proceeding by a court-appointed lawyer. *See* June 16, 2017 Op. &

---

1217, 1225 (2d Cir. 2002) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

Order 10.

### III. The plea allocution provided adequate assurances that petitioner's plea was knowing and voluntary.

Petitioner makes two additional arguments that his plea was neither knowing nor voluntary: (1) the court did not notify him about the possibility of a safety-valve reduction in his sentence, and (2) he was not adequately informed of the elements of the offense to which he pleaded. Pet. 10–12. Read liberally, his petition also makes the general assertion that his illiteracy and limited education rendered his plea involuntary, as he did not fully understand the nature of the plea proceedings or the consequences of his guilty plea. Because these claims are contradicted by the record and otherwise meritless, they fail.

First, petitioner's argument that I should have informed him of the possibility of a safety-valve reduction is not supported by the plain terms of Federal Rule of Criminal Procedure 11(b)(1). To comply with the rule, a district court must inform a defendant of the maximum and minimum penalties of the crime as they exist under the statute; the court need not also inform a defendant of the minimum sentence that he *could* receive if the safety valve were applicable in his case. *United States v. DeJesus-Abad*, 263 F.3d 5, 8 (2d Cir. 2001). The record of the plea allocution clearly demonstrates that Campbell was adequately informed that he could face between ten years and life in prison as a result of his plea. Plea Tr. 11. Moreover, as the government argues, Campbell was already aware at the time of his plea that he would not be offered a safety-valve reduction, as the government found that he failed to provide truthful and complete information during the safety-valve proffer. Gov't Letter 17.

Second, Campbell's statements regarding his own criminal liability demonstrate that his conduct fell within the scope of the conspiracy charge and that he was sufficiently aware of the elements of the crime to which he was pleading. I began the plea allocution by reading him the

complete language of the charge and clarifying that the term "conspire" "simply means agreed," Plea Tr. 7; *see United States v. Carr*, 713 F. App'x 17, 18 (2d Cir. 2017) (summary order) (noting that there is no "particular formula" necessary to establish that a defendant understands the elements of the crime to which he is pleading, and that the rule can be satisfied by "reading the indictment to the defendant" (citations omitted)). I later asked petitioner to inform me in his own words what he did that demonstrated his liability. Campbell's subsequent admissions—that he formed an agreement with other individuals to import over 1,000 kilograms of marijuana into the United States between 2004 and 2009, and that he delivered drugs throughout Brooklyn pursuant to that agreement—clearly meet the elements of the conspiracy charge. *See Carr*, 713 F. App'x at 19 ("The facts acknowledged by [defendant] in his plea agreement were sufficient to establish that his conduct fell within the scope of the conspiracy charge"). In other words, throughout the course of the plea allocution, petitioner provided the court with a sufficient basis for demonstrating that he both understood the elements of the crime and that his conduct fell squarely within it. *United States v. Polanco*, 367 F. App'x 226, 228 (2d Cir. 2010) (summary order) (finding that the district court had sufficiently described the elements of the charge because "all of the elements of the indictment, including the conspiracy, were described in plain language by both the court and the appellant.").

Finally, petitioner's education level and limited reading abilities do not undermine the fact that his plea was knowing and voluntary. After I learned that Campbell struggled with reading and that he had attended school for only four years, I emphasized that Campbell could stop me or his lawyer at any point throughout the plea proceeding to ask questions. Plea Tr. 6–7. At the outset of the hearing, I also warned Campbell that it was crucial that he understood everything that I asked him during the plea hearing, and that, if he had any trouble understanding me, all he had to do was

"stop me and I'll express myself differently until [he does] understand." *Id.* at 3. I read the charge and reviewed the plea agreement's contents with Campbell, using plain and clear language to ask questions and elicit assurances from him that he did in fact understand the proceeding. After each of my questions, Campbell reiterated that he understood the charge and the consequences of his plea, *id.* at 6–7, and, ultimately, that he was ready and willing to enter a plea, *id.* at 15. Before I accepted his plea, I asked him three additional times if he had any questions, reminding him that he was "welcome to ask me anything [he] want[ed]." *Id.* at 16. Mr. Warren further affirmed that he was not aware of any reason why Campbell should not plead guilty, *id.*, and he assured me that he had no doubts regarding Campbell's competency to plead or his ability to understand the nature of the hearing and its consequences, *id.* at 5.

In sum, Campbell's clear and sober on-the-record affirmations—elicited after I gave him numerous assurances that he could ask for clarification at any time—provided a sufficient basis for me to conclude that his plea was knowing and voluntary. *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("[T]he representations of the defendant [and] his lawyer . . . constitute a formidable barrier in any subsequent proceedings. Solemn declarations in open court carry a strong presumption of verity."); *cf. United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea."). Campbell's belated assertions that he lied to me regarding his understanding of the proceeding are contradicted "by all of [his] own sworn acknowledgments, [which were] made to me after he affirmed understanding that untruthful answers to my questions could result in further criminal prosecution for perjury or false statement." June 16, 2017 Op. & Order 11–12.

IV. **Petitioner's sentence did not exceed the maximum penalty.**

Finally, petitioner argues that his sentence—128 months in prison, followed by five years of supervised release—exceeds the statutory maximum. Pet. 8–9. To the extent that this claim is not procedurally barred,[8] it is otherwise without merit. Petitioner's superseding indictment clearly alleged that he was involved in a conspiracy to import at least 1,000 kilograms of marijuana. *See* Superseding Indictment 9–10. During the plea allocution, petitioner also acknowledged that he formed an agreement with other individuals to import that quantity of marijuana into the United States, Plea Tr. 18–19. And in petitioner's plea agreement itself, he agreed that "his Guidelines and statutory mandatory sentence should be calculated based on a drug type and quantity of at least 3,000 kilograms of marijuana." Plea Agreement ¶ 2. Under the statute, petitioner faced a maximum term of life imprisonment for importing at least 1,000 kilograms of marijuana. 21 U.S.C. § 960(b)(1)(G); *see also* 21 U.S.C. § 963 (providing that a person charged with a conspiracy crime "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy"). As a result, petitioner's sentence of 128 months in prison fell far short of the statutory maximum.[9]

## CONCLUSION

For the foregoing reasons, Campbell's petition is denied in full. Because he has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to

---

[8] It does not seem that Campbell raised this argument on direct appeal before the Second Circuit, *see* Br. of Def.-Appellant Desmond Campbell, *United States v. Campbell*, No. 17-2480 (2d Cir. 2018), nor has he demonstrated cause and prejudice for his failure to do so, *see Mui*, 614 F.3d at 54.

[9] Petitioner notes that his brother, Tyrone Campbell, received a significantly lower prison term than he did, despite the fact that he was originally charged in the same indictment as plaintiff. However, petitioner's brother pleaded guilty to a different charge—conspiracy to engage in money laundering—which carried its own mandatory minimum and maximum sentences. *See* Superseding Information, ECF No. 336; Sept. 15, 2010 Minute Entry, ECF No. 337.

issue a certificate of appealability. However, petitioner may make such an application to the Second Circuit. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Dated: January 29, 2019 _____/s/_____
Brooklyn, New York Allyne R. Ross
United States District Judge