UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    -against-

DESMOND CAMPBELL,

    *Defendant.*

09-CR-119-24 (ARR)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

---

ROSS, United States District Judge:

    Defendant, Desmond Campbell, has filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). This provision permits a prisoner, after exhausting administrative remedies, to move for compassionate release on his own behalf and permits me to grant a sentence reduction where "extraordinary and compelling reasons" warrant it after consideration of the applicable factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). Mr. Campbell filed a previous motion for compassionate release in 2021, which I denied. *See* Def.'s Mot. for Compassionate Release ("2021 Mot."), ECF No. 632; Op. & Order Denying Mot. to Reduce Sentence ("2021 Op."), ECF No. 635. In this second motion, Mr. Campbell argues that his sentence should be reduced because he "suffers from a variety of physical ailments which have materially worsened since the filing of his last motion." Def.'s Mot. for Compassionate Release 1 ("Mot."), ECF No. 650. The government opposes, arguing that Mr. Campbell fails to demonstrate "an extraordinary and compelling reason for a reduced sentence" and that the § 3553(a) factors counsel against release. Response in Opp'n 4, 5 ("Opp'n"), ECF No. 656. For the reasons explained below, I grant Mr. Campbell's motion and reduce his sentence to 102 months, or approximately 80 percent of his current sentence.

## BACKGROUND

I have detailed the facts underlying this case in my opinion denying Mr. Campbell's prior motion for compassionate release; I assume familiarity with those facts and summarize them only briefly here. *See* 2021 Op. 1–2. In September 2010, Mr. Campbell pleaded guilty to conspiracy to import 1,000 kilograms or more of marijuana. *Id*. at 1. Prior to sentencing, Mr. Campbell fled to Jamaica, where he was eventually arrested and extradited to the United States. *Id*. In July 2017, I sentenced Mr. Campbell to 128 months of imprisonment and five years of supervised release. Judgment 2–3, ECF No. 602. Mr. Campbell's anticipated release date is March 26, 2026. Government's Letter dated Oct. 20, 2023 at 1, ECF No. 662. There is an immigration detainer for his removal to Jamaica upon his release from prison. Opp'n 2.

Mr. Campbell's first motion for compassionate release was docketed on March 18, 2021. *See* 2021 Mot. In that motion, Mr. Campbell argued that his age and multiple diagnosed medical conditions elevated his risk for serious illness from COVID-19 and warranted his early release from prison. *Id*. at 1, 15–23. I denied Mr. Campbell's motion, finding that although Mr. Campbell had "demonstrated COVID-19 risk factors," those factors alone did not present extraordinary and compelling reasons for his release. 2021 Op. 6. I also determined that because Mr. Campbell had at that point served less than half of his sentence, ordering his immediate release would not be consistent with the § 3553(a) factors, particularly given that Mr. Campbell absconded prior to sentencing. *Id*. at 8.

Mr. Campbell's instant motion for compassionate release was docketed on April 10, 2023. *See* Mot. The government filed its opposition to Mr. Campbell's motion on June 2, 2023, *see*

Opp'n,[1] and Mr. Campbell's reply was docketed on September 22, 2023, *see* Reply.[2]

## LEGAL STANDARD

The First Step Act allows criminal defendants to move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; and (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment. *Id.* § 3582(c)(1)(A). The statute further instructs the reviewing court to consider (3) "the factors set forth in section [18 U.S.C. § 3553(a)] to the extent that they are applicable"; and (4) whether a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission."[3] *Id.* Because Mr. Campbell is proceeding *pro se*, his motion must be

---

[1] Prior to filing, the government moved for an extension of time, which I granted on May 4, 2023. *See* Docket Order dated May 4, 2023. The government then filed its response on June 2, 2023. *See* Opp'n. In a letter docketed on June 13, 2023, Mr. Campbell indicated that he had not yet received the government's response and argued that the government had "defaulted [on] its opportunity to contest the merits" of his compassionate release motion. Resp. to United States 3, ECF No. 658. Mr. Campbell appears to have received the government's response just after he mailed this letter for docketing. *See* Reply to Government's Resp. ("Reply"), ECF No. 660 (stating that he received the government's response "[o]n or about June 12, 2023"). I believe this confusion is due to delays in sending and receiving docket filings via mail at the United States Penitentiary in Atlanta, where Mr. Campbell is presently incarcerated. Regardless, given that the government's response was in fact timely, I dismiss as moot the arguments raised in Mr. Campbell's June 13, 2023 letter.

[2] In the cover page to this reply, docketed on September 22, 2023, Mr. Campbell states that he previously mailed the court a copy of his reply "around July 7th, 2023." Reply 1. No such copy appears to have been entered on the docket; however, I assume the copy Mr. Campbell refers to is identical to the reply that is currently before me, so I will consider the issue moot.

[3] Though not binding with respect to motions brought directly by inmates, *see United States v. Keitt*, 21 F.4th 67, 71 n.2 (2d Cir. 2021), Sentencing Commission policy statements suggest that a reduction in sentence may be appropriate if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. Sentencing Comm'n, U.S. Sentencing Guidelines Manual § 1B1.13(2) ("U.S.S.G."). The factors identified in 18 U.S.C.

liberally construed. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017).

## DISCUSSION

### I. Administrative Exhaustion

Mr. Campbell asserts that he has exhausted his administrative remedies, and the government does not contest this assertion. Mot. 2; Opp'n 5. I therefore conclude that Mr. Campbell has satisfied the First Step Act's administrative exhaustion requirement.

### II. Extraordinary and Compelling Reasons

Mr. Campbell principally argues that his age, medical conditions, and rehabilitation in prison together constitute extraordinary and compelling reasons for a sentence reduction. Def.'s Arg. of Law & Citation of Auth. 1–2, 5 ("Arg."), ECF No. 650.

In determining whether extraordinary and compelling reasons for a sentence reduction exist, district courts have discretion to consider "the full slate" of arguments presented by the defendant, "whether in isolation or combination." *United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020). District courts may also consider "intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." *Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022); *see also United States v. Santos*, No. 01-CR-537 (ARR), 2022 WL 4325520, at *4 (E.D.N.Y. Sept. 19, 2022) (discussing the applicability of *Concepcion*'s holding to motions for compassionate release). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Brooker*, 976 F.3d at 237–38 (quoting 28 U.S.C. § 994(t)).

In addition, Federal Sentencing Commission policy statements identify specific

---

§ 3142(g) are largely duplicative of those in § 3553(a), but they also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)–(4).

4

circumstances that give rise to extraordinary and compelling reasons for a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. 1. Although district courts are not bound or limited by the circumstances identified in these guidelines,[4] they do provide some guidance. For instance, where a defendant seeks a sentencing modification due to medical conditions, the Sentencing Commission suggests that "extraordinary and compelling reasons" may exist where "[a] defendant is . . . suffering from a serious physical or medical condition . . . suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover." *Id*. cmt. 1(A)(ii). The guidelines also suggest that extraordinary and compelling reasons may exist based on the age of the defendant, where the defendant "is at least 65 years old," is "experiencing a serious deterioration in physical or mental health because of the aging process," and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id*. cmt. 1(B).

In his motion, Mr. Campbell, who is 68 years old, describes a "general worsening" in his physical health, as well as a degenerative back condition that "make[s] walking [or] standing for any length of time painful and difficult." Arg. 1. He states that he "is in condierable [sic] pain throughout the day and is in need of immediate help which the Bureau of Prisons cannot give him." *Id*. at 2. Specifically, Mr. Campbell asserts that his back condition requires "an operation followed by physical therapy" but that the Bureau of Prisons has taken "no further action" to schedule the

---

[4] *See Brooker*, 976 F.3d at 237. The most recent amendments to the guidelines, which become effective November 1, 2023, state that extraordinary and compelling reasons may also exist based on "any other circumstance or combination of circumstances" that is not identified in the guidelines but is "similar in gravity." Sentencing Guidelines for the United States Courts, 88 Fed. Reg. 28254, 28254, 28255 (May 23, 2023). This general, open-ended provision further underscores a district court's discretion in determining whether extraordinary and compelling reasons exist in each individual case.

surgery for over nine months and does not offer physical therapy. *Id.* at 4; Reply 7.

The government counters that Mr. Campbell "fail[s] to establish a 'serious deterioration' of his physical health due to age" and that his "asserted health conditions" are not "of a kind" adequate to justify early release. Opp'n 6, 8. With respect to Mr. Campbell's back condition in particular, the government asserts that the Bureau of Prisons does in fact offer physical therapy and argues that Mr. Campbell's records "do not indicate that a medical professional has recommended surgery." *Id.* at 6–7. Even if Mr. Campbell's assertions regarding physical therapy and surgery were true, the government contends, "denial of access to physical therapy or delay of non-emergent surgery do not constitute extraordinary or compelling reasons justifying release." *Id.* at 7.

After reviewing Mr. Campbell's medical record and the parties' arguments, I conclude that Mr. Campbell's age and medical conditions together constitute extraordinary and compelling reasons for a sentence reduction. His medical record confirms that he is experiencing a serious deterioration in physical health that was not evident at the time of my denial of his prior motion. First, Mr. Campbell's record from the past year and a half documents the progression of his degenerative back condition. A radiology report from May 27, 2022 states that an MRI of Mr. Campbell's lumbar spine showed "[b]road based disc bulge with severe facet hypertrophy and severe central canal stenosis" on two vertebrae. Medical R. 152, ECF No. 657-3 (under seal). In a subsequent neurosurgical consultation, he was diagnosed with "[l]umbar [d]egenerative [d]isc [d]isorder." *Id.* at 134–35. Medical encounters from recent months document additional issues that appear to be related to this degenerative disc disorder, including "[m]ononeuropathy of lower limb," *id.* at 103; "[b]ilateral feet numbness and tingling" *id.* at 12, 16; low back and hip pain, *id.* at 12, 15, 16; and sciatica, *id.* at 8.

I agree with the government that it is not clear from Mr. Campbell's record whether a medical professional has recommended surgery to address this degenerative condition.[5] Nonetheless, it is evident that Mr. Campbell's pain and functional impairment from the condition appear to be worsening. For instance, in September 2022, Mr. Campbell reported only "mild" lower back pain. *Id*. at 134. By March 2023, a nurse noted that Mr. Campbell struggled to bend down to remove his shoes for an exam, *id*. at 13; and by April 2023, Mr. Campbell reported "[s]harp" pain at a scale of 8 and presented a "favoring gait," *id*. at 7–8. Mr. Campbell was prescribed Tylenol for his pain in September 2022 but apparently cannot be prescribed nonsteroidal anti-inflammatory drugs due to a renal condition. *Id*. at 135. In March 2023, Mr. Campbell reported that the Tylenol "helps sometimes," *id*. at 12, but by April 2023, he reported taking Tylenol "without relief," and the reviewing physician noted his symptoms only improved when he was "lying down." *Id*. at 7. Mr. Campbell now reports that he has difficulty "stand[ing] straight or walk[ing] for any distance." Reply 7.

In addition to this degenerative back disorder, Mr. Campbell suffers from numerous other conditions, including Type II diabetes, peripheral vascular disease, chronic kidney disease, retinopathy, acute upper respiratory infection, and high blood pressure, among others. Medical R. 27–28. A recent medical report noted that Mr. Campbell's renal failure was "worsening." *Id*. at 4. Concerningly, the report also appears to instruct Mr. Campbell to stop taking the medication used to treat his renal failure and high blood pressure because of his recent "elevated" and "abnormal" PSA levels, which seem to be linked to the medication. *Id*. at 3–4. Mr. Campbell is apparently due

---

[5] For instance, a note from a March 2, 2023 medical appointment states that Mr. Campbell "was recommended to have surgery after MRI," *id*. at 12, but it is not clear whether the medical professional based this note on something in Mr. Campbell's medical record or simply summarized what Mr. Campbell himself stated.

7

to receive a urology evaluation and possible biopsy related to these elevated PSA levels. *Id*. at 3. The report also indicates that follow-up is needed to address Mr. Campbell's "uncontrolled" diabetes condition. *Id*. at 4.

Taken as a whole, Mr. Campbell's medical record demonstrates a significant, ongoing decline in his health as he ages. Contrary to the government's assertion, other courts in the Second Circuit have granted sentence reductions to elderly defendants suffering from a similar range of serious medical conditions. *See, e.g.*, *United States v. Salemo*, No. 11-CR-65 (JSR), 2021 WL 4060354, at *4 (S.D.N.Y. Sept. 7, 2021) (finding extraordinary and compelling reasons for a sentence reduction for a 77-year-old defendant based on the defendant's "age and growing list of medical problems," including "obesity, chronic obstructive pulmonary disorder (COPD), cataracts, and hypertension"); *United States v. Hansen*, No. 07-CR-52 (KAM), 2020 WL 1703672, at *8 (E.D.N.Y. Apr. 8, 2020) (granting compassionate release to a 72-year-old defendant whose medical records "depict[ed] a body and mind besieged with mounting, serious afflictions," including "heart disease," "Type II diabetes," and "elevated PSA," and where the defendant had "trouble walking and balancing himself"); *United States v. Copeland*, No. 02-CR-112 (FB), 2020 WL 2537250, at *1–2 (E.D.N.Y. May 19, 2020) (granting compassionate release and finding a "serious deterioration" in the physical health of a 67-year-old defendant with multiple "ailments," including "hypertension, pre-diabetes, hyperlipidemia, latent tuberculosis infection, and vitamin D deficiency," as well as "liver necrosis" and "aortic atherosclerotic disease"). I likewise conclude that Mr. Campbell's age and deteriorating physical health are extraordinary and compelling reasons warranting a sentence reduction.

Finally, Mr. Campbell also argues that his rehabilitation weighs in favor of early release. Arg. 3–5; Reply 12, 19–22. The government counters that "rehabilitation of the defendant is not,

8

by itself, an extraordinary and compelling reason." Opp'n 8 (quoting U.S.S.G. § 1B1.13 cmt. 3). Here, however, I have already determined that there are other extraordinary and compelling reasons for a sentence reduction, so I will consider Mr. Campbell's rehabilitation as an additional argument in support of his motion. *See Brooker*, 976 F.3d at 238. I conclude that Mr. Campbell's impressive record—especially his clear disciplinary history, *see* Opp'n 8, 10, and the significant coursework he has completed while incarcerated, *see* Mot. 28—further supports a sentence reduction in his case.

### III.   Section 3553(a) Factors

The First Step Act instructs that, even where extraordinary and compelling reasons for a sentence reduction exist, I must also consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). These factors include: the nature and circumstances of the offense; the defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes, and to provide the defendant with needed medical care or other correctional treatment; and the need to avoid unwarranted disparities in sentences among defendants with similar records who have been found guilty of similar conduct. *Id*. § 3553(a).

The government argues that the "nature and circumstances" of Mr. Campbell's offense weigh against a sentence reduction because Mr. Campbell was involved in a conspiracy "that spanned five years" and involved the importation of "literally tons" of marijuana into the United States. Opp'n 9. The government also cites my denial of Mr. Campbell's prior motion, where I found that reducing his sentence to time-served would not "reflect the seriousness of the offense," "afford adequate deterrence," "promote respect for the law," or "provide just punishment,"

9

particularly given that Mr. Campbell absconded prior to sentencing. Opp'n 9 (citing 2021 Op. 8). In his reply to the government, Mr. Campbell emphasizes that his offense was non-violent and that he has no prior criminal history. Reply 11.

After considering each of these factors, I conclude that a sentence reduction is appropriate at this time. The first two § 3553(a) factors in particular weigh in Mr. Campbell's favor. Mr. Campbell's offense was non-violent, he has no prior criminal history, and there are no infractions on his prison disciplinary record. Presentence Investigation Report ¶¶ 45–46, ECF No. 645; Opp'n 8, 10. The government is correct that in denying Mr. Campbell's prior motion, I determined that, because Mr. Campbell had at that point "served less than half of his sentence," reducing his sentence to time-served would be inconsistent with § 3553(a) factors. However, Mr. Campbell has now served well over half his sentence, and I find that a slight reduction of his sentence to approximately 80 percent, or 102 months, is sufficient to afford "deterrence," "promote respect for the law," and "provide just punishment." 18 U.S.C. § 3553(a). Accordingly, after consideration of the § 3553(a) factors, I conclude Mr. Campbell's age and deteriorating health, as well as his rehabilitation, warrant a reduction in Mr. Campbell's sentence to 102 months.

## CONCLUSION

For the reasons above, I grant Mr. Campbell's motion and reduce his sentence to 102 months.

SO ORDERED.

                                                  /s/
                                          Allyne R. Ross
                                          United States District Judge

Dated:        October 25, 2023
                Brooklyn, New York